UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES CLEAR,

                          Plaintiff,              Civil Action No. 17-13836
                                                  Honorable Denise Page Hood
                                                  Magistrate Judge David R. Grand

v.

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration,

                          Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 14]

Plaintiff Charles Clear ("Clear") brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security ("Commissioner")

denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act

(the "Act"). Both parties have filed summary judgment motions (Docs. #11, #14), which have

been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the

Administrative Law Judge's ("ALJ") conclusion that Clear is not disabled under the Act.

Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary

Judgment (**Doc. #14**) be **GRANTED**, Clear's Motion for Summary Judgment (**Doc. #11**) be

**DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be

**AFFIRMED**.

## II.    REPORT

### A. Background

On August 18, 2014, Clear was working in his occupation as a tree trimer.  He alleges that on that day, he was "hit by a 3000 pound tree" on the right side of his body, and that as a result, he suffered injuries to his right (dominant) arm, hand, and shoulder, 4 broken ribs, back pain, neck pain, suspected/potential head injury, and headaches.  On June 16, 2015, Clear filed for Title II Disability Insurance Benefits ("DIB"), alleging disability as a result of his injuries and also high blood pressure and diverticulitis.  (Tr. 95, 147, 209, 217-24).[1]  Clear's alleged onset date is August 18, 2014, the date of the accident causing his injuries, and he was almost 47 years old at that time. (Tr. 77).  Clear completed a twelfth-grade education, and a two-year apprenticeship to become a tree trimmer.  (*Id.*).  After the accident, Clear had surgery, and engaged in physical therapy and follow-up treatment.  (*See, e.g.,* Tr. 272-323; 349-353).

Clear's instant application was initially denied on September 17, 2015.  (Tr. 100-104).  He timely requested a hearing on November 10, 2015.  (Tr. 108-109).  A hearing was held before ALJ Martha M. Gasparovich ("ALJ") on October 12, 2016, in which Clear was represented by counsel Andrea Hamm.  (Tr. 37).  Both Clear and Vocational Expert ("VE") Larissa Bose testified at the hearing.  (*Id.*).  Clear received an unfavorable decision dated February 21, 2017.  (Tr. 15-31). Clear timely requested review of the ALJ's decision to the Appeals Council on March 6, 2017, and the Appeals Counsel denied his Request for Review on November 8, 2017.  (Tr. 1-6, 143). Clear timely filed for judicial review of the final decision on November 29, 2017.  (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Clear's medical

---

[1] Clear had also applied for Disability Insurance Benefits on September 19, 2014, which application was denied at the initial level without an appeal by Clear.  (Tr. 76-83, 145-46).

records, Function and Disability Reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.  ALJ application of disability framework

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Clear is not disabled under the Act. At Step One, the ALJ found that Clear has not engaged in substantial gainful activity since August 18, 2014, the alleged onset date. (Tr. 20). At Step Two, the ALJ found that Clear has the following severe impairments: right shoulder tendinitis, right lunotriquetral ligament disruption, subluxation of the distal ulna, right wrist; right supinator atrophy; right rotator cuff tear; radial neuropathy; status post open reduction and internal fixation of radius and ulna; synostosis of right forearm; and asthma. (Tr. 20). At Step Three, the ALJ found that Clear's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 24). The ALJ then assessed Clear's residual functional capacity ("RFC"), concluding that he is capable of performing a full range of work at all exertional levels but with the following non-exertional limitations: unable to use the right (dominant) upper extremity other than as an occasional assist; could not climb ladders, scaffolds, or ropes; needs to avoid hazards such as moving machinery and unprotected heights; could never crawl; and clean air environment free from concentrated levels of dust, fumes, chemicals, gases, and other airborne irritants. (Tr. 24). At Step Four, the ALJ found that Clear is unable to perform any past relevant work. (Tr. 29). At Step Five, considering Clear's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 29-30). As a result, the ALJ concluded that Clear is not disabled under the Act. (*Id.*).

## C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

In his motion for summary judgment, Clear argues that the ALJ erred: (1) by not ordering a consultative examination for his mental impairments; and (2) in his RFC determination, (a) by being "simply conclusory," without reference to evidence as required by SSR 96-8p, and (b) in the lack of function-by-function analysis.  The issues are addressed below in turn.

*1. The ALJ Did Not Err in Declining to Order a Consultative Examination for Clear's Mental Impairments*

Clear first argues that the ALJ erred in failing to "secure a psychological or psychiatric consultative evaluation to address his mental impairment as well as to perform a residual functional capacity analysis."  (Doc. #11 at 13).  Clear explains,

> Instead, the ALJ uses her own medical expertise in determining that he only has mild limitations in the four broad functional areas for evaluating mental disorders and therefore, his medical condition was not severe despite the above outlined severe symptoms outlined above and the diagnosis made by a neuropsychological evaluator with a PhD who is in a more educated position than the ALJ to determine whether a severe medical conditions [sic] exist.

(Doc. #11 at 13).

Clear cites 20 C.F.R. § 404.1503(e), which "tracks the provisions of the Social Security Act 42 U.S.C. § 421(h)," and 20 C.F.R. § 416.903(e), but both are inapposite.[2]  20 C.F.R. § 416.903(e) is inapplicable here as it concerns "determinations for childhood impairments."  As to 20 C.F.R. 404.1503[3], the language in effect at the time of Clear's hearing stated, in full,

> (e) Initial determinations for mental impairments.  An initial determination by a State agency or the Social Security Administration that you are not disabled (or a  Social  Security  Administration  review  of  a  State  agency's  initial

---

[2] Notably, Clear fails to cite or discuss 20 C.F.R. § 404.1519a, entitled "When we will purchase a consultative examination and how we will use it."

[3] It should be noted this law has since been revised, but the revised version only became effective March 27, 2017, after Clear filed his claim.

determination), in any case where there is evidence which indicates the existence of a mental impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment. If the services of qualified psychiatrists or psychologists cannot be obtained because of impediments at the State level, the Commissioner may contract directly for the services. In a case where there is evidence of mental and nonmental impairments and a qualified psychologist serves as a psychological consultant, the psychologist will evaluate only the mental impairment, and a physician will evaluate the nonmental impairment.

20 C.F.R. § 404.1503.

In the instant case, where Clear is challenging the ALJ's decision-making process, he has improperly framed the issue. According to Clear, "20 CFR § 404.1503(e) requires the State agency to have a psychologist or psychiatrist review a file when there is evidence of the existence of mental impairment." (Doc. #11 at 10). But Clear omits a crucial portion of the regulation: it applies at an *initial determination*. There is not a *continual* requirement to have a psychologist or psychiatrist review all files, whenever there is evidence of the existence of mental impairment, as Clear's language suggests.

The regulation also indicates such psychiatrist or psychologist review, if necessary, would *precede* an initial determination. *See* § 404.1503(e) ("An initial determination … will be made *only after* every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.") (emphasis added). This Court has previously held that an ALJ's decision is not an "initial determination," eliminating the applicability of the cited regulation. *See Moon v. Comm'n of Soc. Sec.*, No. 16-13732, 2018 WL 1406840, at *3 (E.D. Mich. Mar. 21, 2018) ("As the ALJ's review in this case was not an initial determination under subsection (a), (c), (g), or (i), § 421(h) did not apply to the proceedings before the ALJ. It follows that the ALJ did not

violate that statutory provision in not having a psychiatrist or psychologist evaluate [claimant's] mental health.") (collecting cases); *see also Ford v. Comm'r of Soc. Sec.*, No. CV 16-11725, 2017 WL 9477652, at *4 (E.D. Mich. Jan. 31, 2017), *report and recommendation adopted,* No. 16-11725, 2017 WL 908299 (E.D. Mich. Mar. 8, 2017) ("It is clear, then, that the regulations [ ] on their face, apply only to *initial* determinations for mental impairments.")).  In *Moon*, this Court explained in detail the implications of 20 C.F.R. § 404.1503(e)'s "initial determination" language. *See Moon, supra* at *2-4.  Because the language of 404.1503(e) tracks §421(h), the Court interprets the contours of both similarly.  *Id.* at *3-4.  Section 421(h) provides, in relevant part:

> An initial determination under [421] subsection (a), (c), (g), or (i) shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure—
>
> (1) in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual function capacity assessment;
>
> * * *

42 U.S.C. § 421(h).

As explained in *Moon*, "the introductory phrase limits subsection (h)'s 'every reasonable effort' requirement to those determinations made pursuant to §421(a), (c), (g), and (i), and, while not categorical, subsection (d) is the appropriate section providing for a hearing before an ALJ." *Moon, supra* at *2-4.

To the extent Clear argues his initial determination was improperly made without a consultative examination, that argument similarly fails.  The record shows there was no error in the initial determination level when Clear did not receive a consultative psychological or psychiatric evaluation.  Clear's initial disability determination does not list depression, anxiety, or any mental health impairment within Clear's "allegations of impairments." (Tr. 84).  Rather, he

listed only the following: "4 broken ribs right side (hit by a tree at work); broke right arm in 3 places, a plate and 2 rods in arm; torn rotator cuff and tendon in right shoulder; neck and back pain; suspected/potential head injury; high blood pressure (affected by my pain)." (*Id.*).  In the psych category of impairments, Clear's initial determination specifies, "no psych alleged.  No psych impairment in MER." (Tr. 87).  The examiner noted that Clear "answered all questions" and had no communicative limitations.  (Tr. 87, 91).  Nevertheless, toward the end of the initial determination, the Disability Examiner wrote, "Possible hidden psych condition is considered given ADL information indicating a difficulty concentrating and alleges possible head injury.  There is no MDI in MER to support hx head injury.  No other evidence in the file of a psych symptom or condition.  Thus, a discrete psych condition is ruled out."  (Tr. 88).  As there was insufficient evidence of mental impairment at the initial level[4], the initial determination properly declined to order a consultative examination.  (Tr. 87).

Further, Clear did not raise the lack of consultative examination at his hearing before the ALJ to review the initial denial of benefits.  At the very beginning of the hearing, Clear's counsel informed the ALJ that she did not review the record prior to the hearing.  (Tr. 39).  The ALJ then asked whether counsel still wanted to proceed, to which counsel responded affirmatively.  (Tr. 40).  The ALJ then clarified that she had the recent records from Mayo Clinic through May 2016, presumably including the psychological evaluation from Dr. Garlinghouse, in which Clear was diagnosed with depression and anxiety.  (*Id.*).  Later in the hearing, Clear testified about his symptoms of depression.  (Tr. 61-63).  Even after Clear's testimony about his depression, and after the ALJ indicated she was going to hold the record open for two weeks to permit Clear to submit

_____

[4] The Court notes that the psychological evaluation from Dr. Garlinghouse, conducted on February 16, 2016, was not before the examiner at the initial determination, which occurred on January 5, 2015.  (Tr. 83, 452).

additional records and a brief, Clear did not request a consultative examination.  (Tr. 18, 74).

Clear's counsel also apparently did not file anything after the hearing, nor did she submit a request

after the hearing for a consultative examination.  (Tr. 74).

Nor was the ALJ otherwise required to obtain a consultative opinion as to Clear's alleged

mental limitations.  "The failure to consult with an expert requires remand only where there is

significant evidence of a possible mental impairment that allegedly prevented the claimant from

working." *Hudson v. Comm'r of Soc. Sec.*, No. 16-10032, 2017 WL 1030216, at *3 (E.D. Mich.

Feb. 22, 2017), *report and recommendation adopted,* No. 16-10032, 2017 WL 1021072 (E.D.

Mich. Mar. 16, 2017) (quoting *Marcum v. Comm'r of Soc. Sec.*, 2000 WL 92262, at *4 (6th Cir.

Jan. 18, 2000).  Here, while there was some evidence that Clear experienced depression and

anxiety, there was not significant evidence of mental impairments that prevented him from

working.  First, Clear indicates no specific reason why the record evidence regarding his mental

impairments was insufficient for the ALJ to render a decision.  To the contrary, the record, as will

be discussed *infra,* provided sufficient evidence for the ALJ to consider Clear's mental

impairments.  Second, Clear had not sought any psychiatric or psychological treatment for his

symptoms.  (Tr. 61).  And, while Clear mentioned on his function report that he gets mood swings

and anxiety, he clarified such feelings arise in certain situations (not all the time), and his

description of such symptoms did not suggest they were disabling.  Clear wrote, "I have anxiety

attack [sic] and try to avoid confrontations.  I get anxious when I have to go to the doctors

appointment.  I'm afraid to go back to work."  (Tr. 217).  Significantly, when asked about

conditions that limit his ability to work, he failed to mention any mental impairments preventing

or limiting his *ability* to work, rather than his *desire* to work, or feelings about work.  (*Id.*).  Finally,

Clear routinely denied psychological symptoms, including anxiety, depression, hopelessness, and

sadness during doctor's appointments and check-ups. (*See, e.g.,* Tr. 289, 338, 360, 362, 363, 364, 367). The foregoing evidence belies Clear's argument that the record contained significant evidence of mental impairments limiting his ability to work.

The psychological evaluation conducted by Dr. Matthew Garlinghouse on February 16, 2016, which the ALJ appropriately discussed, similarly supports the ALJ's decision not to obtain a consultative examination regarding Clear's mental limitations. (Tr. 23-24, 452-458). For example, although Dr. Garlinghouse noted "[e]motionally, Mr. Clear endorsed symptoms of depression and anxiety, beginning following 2014 injuries sustained," (Tr. 452), the doctor noted that "[f]unctionally, Mr. Clear stated that he maintains independence in all basic self-care, reportedly without difficulty. He also indicated that he is able to complete more advanced daily skills, including cooking, and household chores without any notable concerns. He is currently managing his own medication and appointments, but is highly dependent upon calendars and alarms." (Tr. 453). Ultimately, Dr. Garlinghouse found:

> [Clear's] overall cognitive profile is inconsistent with major neurocognitive impairment, an underlying neurodegenerative process, or significant neurocognitive residual effects from injuries sustained. In fact, testing portrayed Mr. Clear as a gentleman who performed within normal limits on tests of analytical reasoning, verbal comprehension, verbal fluency, naming, and broad ability to recognize previously learned material.
>
> Overall, [] Clear's performance profile suggested largely intact cognitive functioning with performance variation on select tasks of working memory, processing speed, planning, and some difficulty independently retrieving material from memory.[5]

---

[5] As to the issues where Dr. Garlinghouse found "performance variation," he noted, "Mr. Clear's results should be taken in context of a reported history of learning disability throughout schooling," and "it is clear that Mr. Clear is currently experiencing clinically elevated levels of affective distress which are likely to impact his cognitive functioning in daily life. Given that processing speed and working memory are highly vulnerable to anxiety and depression, it is anticipated that by addressing and treating Mr. Clear's present emotional distress, his cognitive functioning difficulties may ameliorate." (Tr. 457).

(Tr. 457).

The level of evidence in the record here regarding Clear's mental impairments resembles that in *Marcum v. Comm'r of Soc. Sec.*, 205 F.3d 1341, at *3-4 (6th Cir. 2000), where the Sixth Circuit found insufficient evidence to trigger a consultative report for mental impairments.  In *Marcum*, the plaintiff reported depression and sleep problems to his doctor, but did not seek any further psychological or psychiatric treatment.  Also like Clear, on appeal, the plaintiff in *Marcum* argued that remand is required because the ALJ did not have him evaluated by a qualified psychiatrist or psychologist, pursuant to 42 U.S.C. § 421(h).  The Sixth Circuit found that the ALJ did not err in failing to consult with mental health experts, based on the insufficient evidence brought by the plaintiff of a mental impairment.  *Id.* at *4.

Here, just as in *Marcum*, the ALJ appropriately concluded that the record does not contain significant evidence of a mental impairment that would impact Clear's ability to perform work consistent with the RFC she adopted.  In Step Two, after evenly considering the relevant evidence, the ALJ found Clear's alleged mental impairments did not rise to the level of severe impairments. (Tr. 20-22).  She found Clear had mild limitations in each of the four functional areas, and she cited specific examples of Clear's limitations in each area, such as his recent lack of socialization, his difficulty remembering conversations verbatim, his difficulty standing at the stove for extended periods, his need for help lifting pans, and his ability to pay attention for only "an hour or so depending on his pain level."  (Tr. 21).  However, she also noted evidence contradicting severe limitations, such as Clear's ability to follow written and spoken instructions, his visits with his parents, friends, and brother, going out to eat, managing his own finances, preparing his own meals, and completing certain personal activities independently.  (Tr. 22).  Notably, Clear does not

argue that the ALJ's Step Two finding regarding his mental impairments was unsupported by substantial evidence.

Finally, any error here is harmless. Clear bears the burden to show that his mental impairments significantly limit his ability to do basic work activity. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). He has not met his burden, as he indicates no specific functional limitation allegedly arising from any mental impairment that the ALJ should have included in the RFC. Although there was a diagnosis of depression along with Clear's above-mentioned reports of symptoms, even together, those do not indicate a significant impairment or functional limitation. *See Richard v. Astrue*, No. 5:10-CV-02190, 2011 WL 4688788 (N.D. Ohio Oct. 4, 2011) ("[I]t is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007) (citing 20 C.F.R. § 404.1508) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms.").

Further, Dr. Garlinghouse's detailed treatment plan included recommendations for mitigating Clear's depression and anxiety. (Tr. 457-58). Clear was "strongly encouraged" to pursue various treatments, such as psychotherapy, "short-term therapy geared towards behavioral activation for depression," self-administered stress-reduction techniques, mindfulness techniques, and self-care, "especially in the context of sleep disruption," including specific strategies to improve nighttime sleeping, such as refraining from daytime naps. (*Id.*). This Court has previously held that "an impairment that can be remedied by treatment will not serve as a basis for a finding of disability." *Harris v. Heckler*, 756 F.2d 431, 436 (6th Cir. 1985) (citing *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir.1967)); *see* also 20 C.F.R. § 404.1530(a) ("In order to get

benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." ).  Although the record is silent as to the effectiveness of these recommendations for Clear, there is at least some indication that the severity of Clear's symptoms may be mitigated by following such recommendations.  Clear has therefore failed to show a strong likelihood that the ALJ's decision regarding disability would be changed if a consultative examination had been completed.  While this may not be dispositive, it cuts against Clear's argument of reversible error.

In sum, Clear has not shown that the ALJ erred in failing to order a consultative examination regarding his mental impairments.

### 2.  *Substantial Evidence Supports the ALJ's RFC assessment*

#### (a) The ALJ Complied with SSR 96-8p

The ALJ assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He would be unable to use the right (dominant) upper extremity other than as an occasional assist.  He could not climb ladders, scaffolds, or ropes.  He needs to avoid hazards such as moving machinery and unprotected heights.  He could never crawl.  [Clear] requires work in a clean air environment free from concentrated levels of dust, fumes, chemicals, gases, and other airborne irritants.

(Tr. 24).

In support of the above-mentioned RFC, the ALJ considered in detail Clear's limitations resulting from his impairments, and relevant record evidence.  (Tr. 24-29).  For example, the ALJ noted that, although on August 18, 2014, Clear had right rib fractures, right pulmonary contusion, a right proximal radius and ulnar fracture, and he then underwent open reduction internal fixation of his right proximal radius and ulnar fracture, and was discharged from the hospital on August 25, 2018 in stable and improved condition.  (Tr. 25).  The ALJ noted that subsequent "progress

notes indicated he was doing well and making good progress with improving pain and minimal tenderness," and "[p]hysical therapy progress notes indicate he demonstrated improvement and had good tolerance to treatment with no complaints of increase in pain." (Tr. 26). She further explored, in detail, the progress shown later in Clear's physical therapy, including "increased grip strength and pinch strength," "improvement in wrist range of motion," healed fracture, and increased functional level to 75 percent. (*Id.*). The ALJ then reviewed objective medical testing, including a CT arthrogram, CT scan, X-rays, and a nerve conduction study, ultimately noting Dr. Edward Burke's assertion that "the fractures of the radius and ulna had healed…and [Clear] still had reasonably fair function of his right arm." (Tr. 27). The ALJ also noted further studies and an MRI revealing no fracture, dislocation, bone bruising, or significant degenerative changes. (Tr. 28). Finally, the ALJ considered Clear's allegations of daily pain, and the impact of such pain and limited movement in his right arm/fingers on his activities of daily living. (Tr. 25). After reviewing his subjective indications, the ALJ noted record evidence cutting against his reported severity of symptoms, including his "daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," his "essentially routine and/or conservative in nature" treatment, including his failure to seek treatment from a specialist for alleged disabling pain or back/neck issues, his recent vacation, and his failure to follow-up on a recommended surgery. (Tr. 27-28). The ALJ also specified, "[a]s required by SSR 96-8p, the residual functional capacity has been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." (Tr. 24).

Clear now argues that the ALJ's decision was not supported by substantial evidence because "nowhere in the ALJ's decision does she provide a narrative stating the medical

documentation she reviewed in connecting it with her RFC outlined on page 7." (Doc. #11 at 14). In response, the Commissioner argues, "[Clear's] sweeping accusation mischaracterizes the ALJ's decision by ignoring more than four pages of detailed analysis of medical and nonmedical evidence that supported the assessed physical RFC (Tr. 24-29)." (Doc. #14 at 13). The Court concurs with the Commissioner that Clear's argument lacks merit.

SSR 96-8p requires "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p. Here, the ALJ did just that. (*See* Tr. 24-29). The foregoing discussion shows that Clear's assertion that the ALJ made only "conclusory statements" without referencing record evidence is simply inaccurate. Clear also fails to cite any particular record evidence lending support to additional functional limitations that should have been imposed by the ALJ. Further, Clear fails to discuss, in any detail, the ALJ's thorough review of his medical records, testimony, reports, and other evidence. (Tr. 22-28).

Next, Clear appears to fault the ALJ for "the record [being] devoid of any RFC assessments from any physicians whatsoever allowing the ALJ to properly assess Plaintiff's RFC." (Doc. #11 at 14-15). But, "although an ALJ has the affirmative duty to develop the factual record, the ALJ need not 'seek out a physician's medical opinion where one is not offered.'" *Gerrick v. Comm'r of Soc. Sec.*, No. 15-CV-12998, 2016 WL 5369620, at *2 (E.D. Mich. Sept. 26, 2016), *aff'd,* No. 16-2664, 2017 WL 5992235 (6th Cir. Aug. 14, 2017) (quoting *Brown v. Comm'r of Soc. Sec.*, 602 Fed.Appx. 328, 331 (6th Cir. 2015)). Clear, too, as the claimant, bears the burden "to seek out specific evidence to support [his] claim." *Gerrick, supra* at *2. *See also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (2011) ("It is not unreasonable to require the claimant, who is in a better position

16

to provide information about his own medical condition, to do so.").  At any rate, for the reasons discussed above, the Court finds that the ALJ's RFC assessment is supported by ample medical and other record evidence.

In sum, the ALJ fulfilled her obligation to evaluate the evidence, resolve conflicts in the evidence, and formulate an RFC based on thorough and detailed analysis.  *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  Clear has not established error in the ALJ's analysis, and remand is not warranted.

*(b) The ALJ Did Not Err in Omitting a Function-by-Function Assessment*

Clear's final argument is that the ALJ failed to abide by SSR 96-8p, as "nowhere in the ALJ's decision does the ALJ separately address [Clear's] ability to sit, stand, walk, lift, carry, push and pull and outline the medical evidence that she relied upon in coming to these conclusions." (Doc. #11 at 16).  This argument lacks merit, as the Sixth Circuit has expressly rejected it:

> Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . . [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted).

SSR 96-8p provides, "RFC assessment is a function-by function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.  Further, RFC involves both exertional and non-exertional factors with exertional capacity involving seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately."  SSR 96-8p.  Here, the ALJ properly considered the function-by-function evidence both at the hearing, and within her thorough discussion of the RFC assessment.

For example, at the hearing, the ALJ explicitly questioned Clear about sitting, standing, walking, and lifting. (Tr. 64-67). Further, in her decision, the ALJ wrote, "[Clear] reported a pain level of 4-5 on a typical day, which increases to 7-8/10 when he grocery shops. He testified that he can sit about 40 minutes; stand for about five minutes; walk about a couple of houses, due to ankle swelling; and lift 10 pounds with both hands, and a gallon of milk with the left hand only." (Tr. 25). She also considered his disability report, which included Clear's self-reported function-by-function analysis. (Tr. 19). The ALJ then clarified Clear's statements "have been found to affect [his] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Tr. 25). Although she did not explicitly list a function-by-function analysis in the RFC determination, as mentioned previously, she was not required to have done so to properly consider the underlying evidence.

Clear relies on *Hogan v. Astrue*, 491 F. Supp. 2d 347 (W.D.N.Y. 2007), in which another court found error in the ALJ's failure to provide a function-by-function assessment. However, this Court has already rejected *Hogan's* applicability because it is contrary to the Sixth Circuit case law discussed above. *See Mims v. Colvin*, No. CV 16-10037, 2017 WL 993101, at *4 (E.D. Mich. Feb. 3, 2017), *report and recommendation adopted sub nom.,* No. 16-CV-10037, 2017 WL 1055542 (E.D. Mich. Mar. 21, 2017)). Here, just like in *Mims,* "[t]he ALJ's thorough analysis of the record satisfies the requirements of SSR 96–8p, and she cited substantial evidence in the record to support her conclusions such that her decision should be affirmed." *Id.*

Finally, Clear argues that his testimony in this case "clearly indicates severe restrictions with regard to sitting, standing, lifting and carrying. He has difficulty standing and sitting. Pain level increases with shopping… difficulty holding things such as a plate…. These limitations are not explored by the ALJ outside of conclusory statements." (Doc. #11 at 17). However, Clear's

arguments are nothing more than an improper request that this Court re-weigh evidence to arrive at a different decision, favorable to Clear. *See Williams v. Comm'r of Soc. Sec.*, 2018 WL 1322396, at *10 (E.D. Mich. Feb. 26, 2018) (an ALJ's decision cannot be reversed "merely because there exists some other evidence in the record that might support a different conclusion"); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Clear's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: December 28, 2018                          s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge


## REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party

might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager